UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| WILD FISH CONSERVANCY; HARRIET S. BULLITT, | ) ) ) | NO.   CV-09-0206-LRS |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| KENNETH L. SALAZAR, in his official capacity as the Secretary of the United States Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; SAM D. HAMILTON, in his official capacity as the Director of the United States Fish and Wildlife Service; UNITED STATES FISH AND WILDLIFE SERVICE; JULIE COLLINS, in her official capacity as the Leavenworth National Fish Hatchery Complex Manager; MICHAEL L. CONNOR, in his official capacity as the Commissioner of the Bureau of Reclamation; and the UNITED STATES BUREAU OF RECLAMATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

A hearing on the above matter was held December 9, 2009.  Brian Alan Knutsen participated on behalf of the Plaintiffs Wild Fish Conservancy ("WFC") and Harriet S. Bullitt ("plaintiffs").   Charles Shockey

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

participated on behalf of the Defendants United States Fish and Wildlife Service ("FWS"), United States Bureau of Reclamation ("BOR"), United States Department of the Interior, Julie Collins, Michael L. Connor, Rowan W. Gould, and Kenneth L. Salazar ("defendants").  The Court heard oral argument on the defendants' Motion To Dismiss (Ct. Rec. 9). Defendants moved to dismiss all counts of plaintiffs' complaint pursuant to Fed.R.Civ.P. Rule 12, for lack of subject matter jurisdiction. Defendants further assert the court should dismiss the complaint because the plaintiffs failed to plead any claim on which relief may be granted. Plaintiffs oppose defendants' motion and request the court to deny defendants' motion and find subject matter jurisdiction so that the merits of the case can be determined during the course of this lawsuit.

**I.    INTRODUCTION**

In this case, the plaintiffs challenge the operation of the Leavenworth National Fish Hatchery ("Hatchery"), located on Icicle Creek. Specifically, WFC alleges that the U.S. Fish and Wildlife Service ("FWS") and other named defendants are in violation of the State Water Code ("state water code") pursuant to Surface Water Right Certificate Nos. 1823, 1824, and 1825 issued by the Washington Department of Ecology (Ecology) with priority dates back to 1942 and 1984.  Complaint, ¶¶ 79-81.  Plaintiffs claim these alleged state law violations necessarily constitute violations of "federal reclamation law," including the Act of June 17, 1902 (Reclamation Act of 1902), ch. 1093, 32 Stat. 388, 43 U.S.C. § 391, et seq., the Reclamation Project Act of 1939, 53 Stat. 1187, 43 U.S.C. § 485, et seq., and the Columbia Basin Project Act, 16 U.S.C. §§ 835-835m. Complaint, ¶¶ 20, 82.

They also allege that the Hatchery, "by failing to maintain fishways on the Hatchery's structures," failed to comply with Washington's Fishway Law ("state fishway law"), RCW 77.57.030(a).   Complaint, ¶¶ 86-88. Finally, they submit that the violations of state law constitute a failure to comply with federal reclamation law, contrary to the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(1), (2).  Complaint, ¶¶ 83-84, 90-91.

## II.   FACTUAL BACKGROUND

### The Parties

Plaintiff WFC, previously known as Washington Trout, is a non-profit, 501(c)(3) organization with its principal place of business in Duvall, Washington.  *See* Complaint for Declaratory and Injunctive Relief, Ct. Rec. 1.  WFC is dedicated to the preservation and recovery of Washington's native fish species and the ecosystems upon which those species depend. WFC brings this action on behalf of itself and its approximately 2,400 members.

WFC actively informs the public on matters affecting water quality, fish, and fish habitat in the State of Washington through publications, commentary to the press, and sponsorship of educational programs.  WFC also conducts field research on wild-fish populations and has designed and implemented habitat restoration projects.  To achieve its goals, WFC has lobbied, litigated, and publicly commented on federal and state

///
///
///
///

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

1  actions that affect state waters[1].  Ct. Rec. 1.

2      Plaintiff Harriet S. Bullitt is fee owner or part owner of
3  approximately 350 acres of property adjacent to the Hatchery, containing
4  approximately 2 miles of riverbank, including all of the riverbank on the
5  east side of Icicle Creek and some of the riverbank on the Hatchery's
6  side.  Ct. Rec. 1, ¶ 7.  Plaintiff Bullitt and members of WFC use Icicle
7  Creek for recreation and spiritual renewal.  Recreational, scientific and
8  aesthetic benefits are derived from the existence of a healthy ecosystem
9  and from wildlife in and around Icicle Creek.

10     Defendant Kenneth L. Salazar is the Secretary of the United States
11 Department of the Interior.  Ct. Rec. 1, ¶ 12. He and the other
12 individual defendants are responsible for ensuring the Hatchery's
13 compliance with applicable laws.  Id.  All of the named individuals are
14 sued by plaintiffs in their official capacities.

15

16     [1] WFC, formerly Washington Trout, has challenged the operation and
17 management of the Hatchery under federal environmental statutes in two
18 earlier cases filed in this court.  The first case (No. 2:05-CV-181-LRS)
19 involved claims under the Endangered Species Act (ESA), 16 U.S.C. §§
20 1531-1544, and National Environmental Policy Act (NEPA), 42 U.S.C. §§
21 4321-4357.  Judgment was entered for defendants on April 30, 2009.  *Wild
22 Fish Conservancy v. Kempthorne*, 613 F. Supp.2d 1209 (E.D. Wash. 2009),
23 appeal docketed (9th Cir. June 3, 2009) (No. 09-35531).  The second case
24 (No. 2:05-CV-203-LRS) alleged violations of the Clean Water Act (CWA),
25 33 U.S.C. §§ 1311, 1342.  *Washington Trout v. Leavenworth National Fish
26 Hatchery* (dismissed after 2007 settlement).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 4

Defendant United States Department of the Interior is an agency within the executive branch. Ct. Rec. 1, ¶ 13. Defendants United States Fish and Wildlife Service and Bureau of Reclamation are sub-agencies, referred to as "bureaus," within the United States Department of the Interior. Id.

Defendant Rowan W. Gould is the Acting Director for the United States Fish and Wildlife Service. Ct. Rec. 1, ¶ 14. Defendant Julie Collins is the Complex Manager of the Hatchery and defendant Michael L. Connor is the Commissioner of the United States Bureau of Reclamation. Ct. Rec. 1, ¶ 16-17.

Defendant United States Fish and Wildlife Service owns and operates the Hatchery. Ct. Rec. 1, ¶ 15. Hatchery operations are funded by the United States Bureau of Reclamation, Ct. Rec. 1, ¶ 18.

**The Hatchery**

The Leavenworth National Fish Hatchery, originally authorized by the Grand Coulee Fish Maintenance Project and reauthorized by the Mitchell Act of 1938, is one of three mid-Columbia stations constructed by the U.S. Bureau of Reclamation ("BOR") as fish mitigation facilities for the Grand Coulee Dam, Columbia Basin Project. *Kempthorne*, 613 F.Supp.2d 1209, 1213. Construction began in 1939 and was completed in 1941. The Hatchery is located three miles south of Leavenworth, Washington, near the mouth of Icicle Canyon. *Id.* Icicle Creek is a tributary of the Wenatchee River, located near Leavenworth, Washington, which itself feeds into the Columbia River. *Id.*

A series of dams and weirs was installed in Icicle Creek to create "ponds" to hold hatchery fish. In 1938, BOR filed applications with the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 5

the Washington Department of Ecology ("Ecology") to appropriate water from the Wenatchee River (Certificate No. 1823), Icicle Creek (Certificate No. 1824), and Snow Creek (Certificate No. 1825) for fish propagation at the Leavenworth National Fish Hatchery.  The water right claims, as finally certificated by the State, are matters of public record.

In 1948, BOR transferred ownership of the Hatchery and all appurtenances, including water rights, to FWS.  Ct. Rec. 10, at 3. Plaintiffs now allege that defendants – pursuant to Surface Water Right Certificate Nos. 1823, 1824, and 1825 issued by Ecology with priority dates back to 1942 and 1984 – are in violation of the State Water Code. Complaint, ¶¶ 79-81.

The original design of the Hatchery contemplated diversion of up to 300 cubic feet per second (cfs) from the Wenatchee River. Water from this source was diverted and used in the early years, but was found to be unsuitable because of temperature and pathogen issues, and the Hatchery has discontinued use of the Wenatchee River.

Water right Certificate No. 1824 authorized diversion of 200 cfs from Icicle Creek.  The application for Icicle Creek named two points of diversion and diversion conduits, "Icicle Supply Pipe Line to Leavenworth Hatchery and Leavenworth Hatchery Holding-pool channel."  Ct. Rec. 10, at 3.

In 1983, during a mandatory review of beneficial use associated with new ground water applications, Ecology learned that the hatchery was no longer using the Wenatchee River water right, Certificate No. 1823. FWS officially abandoned that certificate in early 1984, and the water right

was cancelled.  During that review, Ecology learned that FWS had not been diverting the entire rate and duty under Certificate No. 1824 because it had ceased diverting water into the historic channel in 1979.  That point of diversion and place of use, which accounted for 158 cfs of the 200 cfs authorized under Certificate No. 1824, were officially abandoned. Ecology issued a superceding permit based on the calculated capacity of the upstream pipeline.  Ct. Rec. 20, at 3-4.

Prior to 1945, BOR drilled wells on Hatchery property to augment the water supply and regulate the temperature of the incoming surface water to improve fish propagation. FWS drilled other wells in subsequent years. FWS currently has several ground water wells, the functional equivalent of water rights.  FWS has two water right claims for wells drilled prior to 1945, and two groundwater permits for wells drilled after the state groundwater code was enacted.  Ct. Rec. 10, at 4.

**III.  DISCUSSION**

At oral argument, Defendants summarized that their pending motion involves essentially three issues:  The first is whether the government has waived its sovereign immunity to allow challenges in federal court under the APA to contest compliance with two state laws, the water code and fishway law?  Second, even if the court does find such a waiver, does the six-year federal statute of limitations bar this challenge to the FWS's water rights?  And third, even if the court finds the government has waived its sovereignty (and there is no statute of limitations bar to satisfy federal subject matter jurisdiction), does the prudential doctrine of primary jurisdiction warrant either dismissal or abstention

at this time?  More specifically, should this court defer federal judicial review until Ecology has conducted and completed an ongoing study and analysis of matters related to water usage at the hatchery?[2] Defendants conclude that this case should be dismissed, or at least stayed until the state agency with unquestioned authority and expertise has completed their review.

### A.  Subject Matter Jurisdiction

### 1.  Waiver of Sovereign Immunity Under APA

Defendants assert this court lacks subject matter jurisdiction as defendants, federal agencies, have not waived their sovereign immunity. Defendants conclude that absent an express waiver, the court must dismiss the suit for lack of subject matter jurisdiction.  Plaintiffs, citing 5 U.S.C. §702, respond that the Administrative Procedure Act ("APA") waives the sovereign immunity of the United States federal defendants for these claims.  Compl., ¶3.  Plaintiffs argue that the Hatchery is subject to the provisions of state law under the Columbia Basin Project Act and federal Reclamation Laws, thus the violations alleged are reviewable under the APA.  Plaintiffs attempt to characterize the BOR, Columbia Basin Project and the Hatchery as unseverable based upon the fact that

---

[2]At oral argument, defendants represented that FWS has filed an application for a Clean Water Act Section 401 permit and that Washington State is purportedly actively processing that application.  The Department of Ecology ultimately will issue a decision on whether to grant or deny with conditions which will impact water operations at the Hatchery.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 8

the Hatchery was funded and constructed by BOR in 1939 as mitigation for the Grand Coulee Dam.  Compl., ¶48-49.

Defendants reply that Congress did not authorize the "Columbia Basin project" as a federal reclamation project until 1943, one year after the State's *Findings and Decision* approved the United States' water rights application for the Hatchery.  Moreover, the Hatchery is not a "reclamation" facility and the water rights are not used for irrigation. In sum, defendants conclude that plaintiffs' legal basis for the alleged violations has little or nothing to do with water used in irrigation, federal reclamation law in general, or the originally authorized Columbia Basin Project in particular.  Finally, defendants argue that the two cases[3] relied upon by plaintiffs are distinguishable, and neither supports plaintiffs' expansive attempt to apply federal reclamation law to FWS's Hatchery operations.

Defendants further reply, relying on *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), that plaintiffs must identify some discrete agency action as a predicate to bringing a claim under the APA. Defendants argue that a claim to compel agency action alleged to have been unlawfully withheld can proceed only where a plaintiff asserts that an agency failed to take a discrete final agency action that it is required to take.  Defendants conclude that plaintiffs have not

---

[3]*South Delta Water Agency v. United States*, 767 F.2d 5312 (9th Cir. 1985))("South Delta"), and *Natural Res. Def. Council v. Patterson*, 791 F.Supp. 1425 (E.D.Cal. 1992)("NRDC").

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 9

1  identified any discrete, final federal agency action as required under

2  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004).

3      Plaintiffs additionally contend that there has been a waiver of

4  sovereign immunity under Section 8 of the Reclamation Act of 1902. Ct.

5  Rec. 20, at 5. Plaintiffs link the Hatchery to the Reclamation Act of

6  1902 via the Grand Coulee Fish Maintenance Project agreement

7  ("agreement") entered into between BOR and the State of Washington to

8  authorize construction of the Hatchery. Ct. Rec. 20, at 5. Plaintiffs

9  explain that the agreement explicitly states that BOR entered into the

10  agreement pursuant to the Reclamation Law of 1902. *Id.* Accordingly,

11  plaintiffs argue, Section 8 of the Reclamation Act of 1902 applies.

12  Section 8 provides:

13          Nothing in this Act shall be construed as affecting or
             intended to affect or to in any way interfere with the
14          laws of any State or Territory relating to the control,
             appropriation, use, or distribution of water used in
15          irrigation, or any vested right acquired thereunder, and
             the Secretary of the Interior, in carrying out the
16          provisions of this Act, shall proceed in conformity with
             such laws . . . "

17

18  43 U.S.C. § 383.

19      Plaintiffs point out that the Reclamation Law of 1939, incorporated

20  into the Columbia Basin Project Act, includes substantially similar

21  section 8 language. 43 U.S.C. § 485h-4. Plaintiffs further explain,

22  citing *Cal. v. United States*, 438 U.S. 645, 650-53 (1978), that the

23  Supreme Court interpreted this provision (section 8) as an early example

24  of "cooperative federalism" requiring the federal government to

25  appropriate water rights for reclamation purposes in conformity with

26  state water laws. Ct. Rec. 20, at 5. Plaintiffs also argue that the

Ninth Circuit held in *South Delta* that 28 U.S.C. §1331 vests the district courts with subject matter jurisdiction to resolve disputes alleging the federal government is in violation of state water laws imposed through section 8 of the Reclamation Law of 1902.  Ct. Rec. 20, at 6 (citing 767 F.2d at 535-36).

Defendants counter that the Reclamation Act of 1902 is the general federal reclamation/irrigation statute.  The key difference between the instant case and the cases cited by plaintiffs, defendants argue, is that the sovereign immunity waiver provision in section 8 is limited primarily to state law proceedings that govern the adjudication of water rights.  To support their argument, defendants discuss the 1985 Ninth Circuit *South Delta* case relied upon by plaintiffs, which case was brought by water right owners.  Defendants assert this fact alone distinguishes the ruling in *South Delta* from this case, as both WFC and Ms. Bullitt do not claim to own any water rights that have been adversely impacted by the Hatchery's operations or the manner in which it uses water for Hatchery activities.

Another difference between the *South Delta* case and the instant case is that the government defendant in *South Delta* denied applicability of state law.  Here, defendants recognize that the state water rights code does apply to the Hatchery's water rights.   Therefore, defendants conclude, there is no conflict between state and federal law in this case which distinguishes it from the cases relied upon by plaintiffs.  A final distinction between the instant case and the cases cited by plaintiffs (*South Delta* and *NRDC*) is that those cases involved the use of water managed by BOR for <u>irrigation</u> purposes which adversely affected fish.

In contrast, defendants argue, this case involves water used by FWS outside of the irrigation project for a nonconsumptive use for fish propagation.  Plaintiffs, however, disagree with defendants' point of distinguishment regarding the section 8 irrigation limitation arguing that there is no indication that Congress intended the words "relating to . . . irrigation" to be narrowly construed.  Ct. Rec. 20, at 6-7.

### 2.  Legal Standards

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may grant a dismissal for failure to state a claim "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  Defendants here seek dismissal based on Fed. R. Civ. P. Rules 12(b)(1), 12(b)(6), and 12(b)(7).

On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff(s).  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), *reh'g denied*, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).  To the extent matters outside the complaint are considered by the Court, a motion to dismiss should be treated as a motion for summary judgment under Fed. R. Civ. P. 56.  Since the parties have submitted declarations in this case, it is properly considered under

1  the summary judgment standard.  It is also noted that at this stage of

2  litigation, defendants have not filed an answer.

3      Under Rule 56(c), summary judgment is proper "if the pleadings,

4  depositions, answers to interrogatories, and admissions on file, together

5  with the affidavits, if any, show that there is no genuine issue as to

6  any material fact and that the moving party is entitled to a judgment as

7  a matter of law." Fed. R. Civ. P. 56(c).  In ruling on a motion for

8  summary judgment the evidence of the non-movant must be believed, and all

9  justifiable inferences must be drawn in the non-movant's favor. *Anderson*

10 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

11 However, when confronted with a motion for summary judgment, a party who

12 bears the burden of proof on a particular issue may not rest on its

13 pleading, but must affirmatively demonstrate, by specific factual

14 allegations, that there is a genuine issue of material fact which

15 requires trial. *Celotex Corpage v. Catrett*, 477 U.S. 317, 324, 106 S.Ct.

16 2548, 2553 (1986).

17     **3.  Analysis**

18     Based upon material allegations in the complaint and construing the

19 complaint liberally in favor of the plaintiffs, the undersigned finds

20 that plaintiffs have minimally alleged indirect violation(s) of federal

21 reclamation law through a purported violation of the State Water Code by

22 the Hatchery and FWS (a federal agency and the sole owner of the water

23 rights in question), thus theoretically providing plaintiffs with a cause

24 of action under the APA.  Similarly, the Washington State fishway law

25 relates to the control of water and this statute is therefore

26 ///

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 13

incorporated into Section 8 of the Reclamation Act of 1902.[4]    As for standing, the Court finds that plaintiffs have minimally alleged injury in fact[5] which falls within the zone of interests sought to be protected by the statutory provision(s) which provide a legal basis for their complaint.    See *Natural Resources Defense Council v. Patterson*, 791 F.Supp. 1425 (1992) ("NRDC").    Therefore, this Court finds that the defendants have waived sovereign immunity and plaintiffs have standing. As for ripeness, the Court defers any discussion on this issue based on the statute of limitations discussion that follows.

**B. Claims are Time-Barred by the Statute of Limitations**

Defendants contend that the plaintiffs have had actual and constructive notice for many years and that the complaint challenging those two state law claims is therefore time barred.    The water rights for Hatchery include Certificate Nos. 1824 (Icicle Creek) and 1825 (Snow and Nada Lakes), both certificates being issued by Ecology with priority

---

[4]The Court notes that the Ninth Circuit Court of Appeals, in its APA cause of action analysis, in dicta, ignored the distinction posited between laws relating to water usage and laws relating to dam operation. *South Delta*, 767 F.2d 531, 537-38 (9th Cir.1985).    This Court also interprets Section 8 of the Reclamation Act more broadly than defendants argue for.    So long as the state statutes at issue have connection with or reference to the control, appropriation, use or distribution of water used in irrigation or other water-related rights, the Court finds Section 8 applicable.

[5]Complaint, ¶8.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 14

dates of 1942.   Defendants assert that plaintiffs have had constructive and actual notice regarding those water rights for at least 25 years, if not 70 years.   Defendants represent that there have been no changes in water rights status since 1984.   Plaintiff Bullitt and her family have owned property and lived along Icicle Creek next to the Hatchery since it was first constructed in the 1930s.   Complaint ¶7.

Defendants argue that plaintiffs have had both actual and constructive notice for many years regarding FWS's water rights and the status of the two structures (Nos. 2 and 5).   Plaintiffs now complain, for the first time, that the water rights violate state law and certain structures unlawfully impede fish passage under state law.

Plaintiffs respond that are challenging alleged discrete violations of the Washington Water Code and the Fishway Law that the Hatchery commits certain times each year, as recently as 2009.   Plaintiffs contend that the defendants violate the state water code statute each and every time they divert water. Plaintiffs further state they are not challenging the construction or the existence of any structures.   Rather, they are challenging discrete closures of those structures that have occurred as recently as this year.   More specifically, plaintiffs assert that FWS's alleged failure to apply for a separate diversion permit at Structure 2 is an "ongoing violation" of the Washington State Water Code and that each insertion of boards at Structure 5 is a separate, discrete violation of the State Fishway Law under *Nat'l Parks Conserv. Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410 (6th Cir. 2007).

Plaintiffs also contend, citing *Wilderness Soc'y v. Norton*, 434 F.3d 584 (D.C. Cir. 2006), that a claim alleging an agency's "failure to act"

under 5 U.S.C. § 706(1) – as opposed to an "action taken" challenged
under § 706(2) – cannot be barred by the statute of limitations.  Ct.
Rec. 20, at 16-17.

Defendants reply that under 28 U.S.C. §2401(a), all civil actions
against the United States must be filed within six years after the right
of action first accrues.  A cause of action accrues when a plaintiff knew
or should have known of the wrong and was able to commence an action
based upon that wrong.  *Shiny Rock Mining Corp. v. U.S.*, 906 F.2d 1362,
1364 (9th Cir. 1990).  Defendants disagree with plaintiffs' theory that
the statute of limitations does not apply because the alleged failure to
comply with state law represents an "on-going" violation that exempts
them from any limitations period.   Ct. Rec. 21, at 5.  Defendants
similarly reject plaintiffs' contention that an alleged failure to act
cannot be barred by the statute of limitations under the facts of this
case.

More specifically, defendants argue that a more recent Eleventh
Circuit opinion, involving the exact same parties involved in the divided
Sixth Circuit panel opinion relied upon by plaintiffs, declined to follow
the Sixth Circuit, and rejected the notion of ongoing violations.  The
Eleventh Circuit upheld dismissal of near-identical claims as barred by
the statute of limitations.  *Nat'l Parks Conservation Ass'n v. Tenn.
Valley Auth.*, 502 F.3d 1316, 1324-26 (11th Cir. 2007); *CleanCOALition v.
TXU Power*, 536 F.3d 1469 (5th Cir. 2008).  Defendants conclude that the
unanimous Eleventh and Fifth Circuit opinions provide the more persuasive
rationale for applying the statute of limitations.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 16

With regard to plaintiffs' "failure to act" theory, defendants reply that the Supreme Court ruled that an APA "failure to act" claim must constitute "a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Norton v. So. Utah Wilderness Alliance* ("SUWA"), 542 U.S. 55, 62 (2004). Defendants argue that plaintiffs have alleged no specific, statutory duty that FWS failed to take. Ct. Rec. 21, at 7.

The continuing violations doctrine permits a plaintiff to sue on a claim that would be time-barred if considered in isolation, but where subsequent violations act to prevent accrual or otherwise toll the limitations period. The United States Court of Appeals for the Fifth Circuit has recognized the viability of the continuing violations doctrine to toll the statute of limitations. *See Mayberry v. Conoco, Inc.*, 2001 WL 1751461 (5th Cir.2001); *Lariscey v. Smith*, 1995 WL 535012, *4 (5th Cir.1995); *Hendrix v. City of Yazoo City, Miss.*, 911 F.2d 1102, 1103 (5th Cir.1990). The scope of the doctrine is unclear, and the United States Supreme Court has not ruled on the issue.

"Case law on the subject of continuing violations has been aptly described as 'inconsistent and confusing ...' " *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 977 (5th Cir.1980); *Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1049 (5th Cir.1982). Though courts have seldom attempted to delve into its origins or theoretical underpinnings, at least one court considers the theory, or certain of its aspects, to be analogous to the concept of a continuing trespass in tort law. *See Thompson v. Sawyer*, 678 F.2d 257, 290 (D.C.Cir.1982) (citing Restatement (Second) of Torts § 899(d)). While the doctrine has not been applied in

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 17

the Fifth Circuit in an ESA citizen suit against the government, it has been applied by other federal courts to toll the 28 U.S.C. § 2401 statute of limitations in citizen suits in which the government owed a continuing duty to the plaintiff.

The federal circuits are split as to whether plaintiffs in suits alleging agency noncompliance with statutory deadlines may be able to avoid the statute of limitations by application of the continuing violation doctrine. The D.C. Circuit has applied the continuing violations doctrine to toll the statute of limitations in cases involving government agency inaction. See *The Wilderness Soc. v. Norton*, 434 F.3d 584 (D.C.Cir.2006) (holding that the six-year, general federal statute of limitations for civil actions against the United States does not apply to actions under the APA to compel agency action unlawfully withheld or unreasonably delayed because the plaintiff in such a suit seeks redress for an alleged continuing violation). Numerous un-appealed federal district court decisions have also considered the applicability of the doctrine. *See, e.g., Central Pines Land Co. v. United States*, 61 Fed. Cl. 527, 537 (Fed.Cl.2004).

In *Southern Appalachian Biodiversity Project v. United States Fish & Wildlife Serv.*, 181 F.Supp.2d 883 (E.D.Tenn.2001), an environmental organization charged that the FWS failed to designate critical habitat for endangered and threatened species under the ESA despite the passage of the statutory deadline for doing so. The FWS argued that the statute of limitations began running the day after the expiration of the statutory deadline, but the court concluded that the agency's non-action constituted a continuing violation so that the statute of limitations

began running anew each day that the agency failed to take action. "In short, the statute of limitations has never commenced to run." *Id*. at 887. *In Center for Biological Diversity v. Hamilton*, 385 F. Supp 2d 1330 (N.D.Ga.2005), the court framed the issue as "not whether Congress intended for Defendants to comply with their statutory duty to designate critical habit for endangered species-it clearly did-but whether Congress intended to allow private parties to enforce this duty at any time after it is violated;" and declined to "ignore the ESA's plain text ... and imply a continuing duty." *Id*. at 1338-1339. On appeal, the Eleventh Circuit, in affirming the district court's ruling, firmly rejected the reasoning of Southern Appalachian Biodiversity Project, holding that a challenge to the FWS's failure to designate critical habitat amounted to a complaint about the continuing effects of the agency's failure to determine the critical habitat by the statutory deadline, a one-time violation of the ESA. 453 F.3d 1331, 1335 (11th Cir.2006).

The Eleventh Circuit noted that it had previously limited the application of the continuing violations doctrine to situations in which a reasonably prudent plaintiff would have been able to determine that a violation had occurred, and such a plaintiff would have been aware of the violation on the day after the statutory deadline *Id*. at 1335-36. The Eleventh Circuit stated that application of the continuing violation doctrine to be most consistent with the principle that waivers of sovereign immunity be interpreted narrowly. *Id*. *See also Gros Ventre Tribe v. United States*, 344 F.Supp.2d 1221, 1229 n. 3 (D.Mont.2004) (stating that the "continuing violations" doctrine evolved in the context of tort and nuisance law and does not apply in the context of an APA

claim for judicial review) ( Aff'd but issue not addressed in *Gros Ventre Tribe v. U.S.*, 469 F.3d 801 (9th Cir.2006).

In *Heartwood v. Norton*, 2005 WL 2656733 (S.D.Ohio 2005), plaintiffs challenged a series of biological opinions issued by the FWS under the ESA. The court stated that the continuing violations doctrine applies only in the event of a continuing series of illegal acts, rather than the continued ill effects of a single violation. The court found that the biological opinions represented single episodes of singular alleged illegal conduct, and thus concluded that the continuing violations doctrine did not apply. *See also Dalles Irrig. Dist. v. United States*, 71 Fed. Cl. 344, 351 (Fed.Cl.2006) (*quoting Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed.Cir.1997) (holding the continuing claim doctrine applied to a breach of contract action against the United States because the claim for breach was "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."); *Central Pines Land Co. v. United States*, 61 Fed. Cl. 527, 537-40 (Fed.Cl.2004) (denying summary judgment where the record did not contain sufficient facts to determine whether the continuing claims doctrine applied); *Fallini v. United States*, 56 F.3d 1378, 1383 (Fed.Cir.1995), cert. denied, 517 U.S. 1243, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996).

Based on the uncontested facts before this Court, defendants' statute of limitations defense and the reasoning of the Eleventh Circuit is persuasive. The particular facts of this case disprove plaintiffs' theory that ongoing violations exempt them from § 2401(a) or, if this Court found the latter theory unpersuasive, that the defendants' alleged

inaction tolled the statute of limitations. Plaintiffs interpretation and attempt to have it both ways, taken to its logical end, suggests a *de facto* elimination of any statute of limitation, for the limitation period would never begin to accrue so long as the Hatchery remained in operation.

Here, Washington State issued surface water rights and ground water permits to the Hatchery starting in 1939; those water rights were subject to public notice and have remained <u>unchanged</u> for 25 years since 1984. Plaintiffs' cause of action to challenge water rights was triggered by the State's action of issuing and amending permits between 1939 and 1984.[6] Thus, any action under federal law to contest the validity of these water rights was required to be brought within six years from the date of issuance, or 1984, the latest of the issued permits. It is clear from documents in evidence that Plaintiff WFC's predecessor Washington Trout and plaintiff Bullitt were both on actual notice of Defendants' water rights in 2000 based on the filed Freedom of Information Act requests for documents relating to the water supply system, including withdrawal of water and authorizations to make diversions at the Hatchery (including at Structure 2) and water withdrawn from wells. Ct. Rec. 22, Exh. 11. Although clearly on notice by the year 2000, neither plaintiffs (or plaintiff WFC's predecessor) brought legal action to challenge these

///

///

---

[6]. "Notice of the application was published for the time and in the manner provided by law." *See* Findings and Decision, Ct. Rec. 20-3, at 1.

water rights or the fishway structures for more than nine years.[7]

Ms. Bullitt's family "purchased substantial acreage along Icicle Creek in the 1930's, a portion of which was transferred to the United States for the development of the Hatchery." Ct. Rec. 1, at 4, ¶ 7. In approving the application to appropriate water, the Division of Water Resources noted that one party filed a protest on May 4, 1942. Ct. Rec. 20-3, at 1. The State rejected that protest, finding "public waters are available for appropriation" and that the "use of said waters is a non-consumptive use and will not affect or injure rights below." *Id.* at 3. All persons (including the Bullitt family) had the opportunity to contest the water right certificate issued in 1942 and the later certificate issued in 1984 within the applicable limitations period. The six-year federal statute of limitations ran in 1990, at the latest.

There appears to be no subsequent events, including Ecology's 1984 superseding Water Right Certificate, that excuse plaintiffs from complying with the statute of limitations. Ecology never indicated that FWS needed a permit or transfer to put water into the Hatchery channel, no one challenged that action within six years, and defendants have not modified their water rights in the past 25 years. Without question, by 2000, WFC and Ms. Bullitt were aware of water use under the Hatchery's permits, as each submitted Freedom of Information Act requests, wherein plaintiffs requested all documents describing or concerning the Hatchery's diversions of water and authorizations to make such

---

[7]Plaintiffs are contesting the point of diversion and the place of use of Defendant FWS's water rights, which Defendants have not changed for 25 years.

diversions. *See* Ct. Rec. 22, Shockey Declaration, Exhibits 8 to 12. Yet neither plaintiff filed suit to contest the Hatchery water rights for nine years. Plaintiffs cannot contest FWS water rights and Hatchery structures at any time of their choosing by ignoring the statute of limitations.

The court finds that plaintiffs' claims are barred by the statute of limitations, 28 U.S.C. §2401(a), as they failed to file their claims within six years of the time from which they had notice regarding defendant FWS's water rights for the hatchery and the existence of the structures which, they allege, unlawfully block fish passage.

When the United States has consented to be sued, the terms of its consent circumscribe the Court's jurisdiction. *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) Id. The statute of limitations is one such term that operates to narrow the waiver of sovereign immunity, and failure to sue the United States within the limitations period is not merely a waivable defense but operates to deprive federal courts of jurisdiction. *See United States v. Williams*, 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); *Gandy Nursery, Inc. v. U.S.*, 318 F.3d 631 (5th Cir.2003); *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1287 (5th Cir.1997).[8]

Defendants have set forth alternative theories as a basis for this Court to dismiss this case, i.e., primary jurisdiction doctrine. The

---

[8]But see, *Calhoun County v. United States*, 132 F.3d 1100, 1104-05 (5th Cir.1998) (noting a split among other circuits as to the jurisdictional nature of statutes of limitations applying to the United States).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 23

Court will discuss, as additional reasons to dismiss, this alternative theory argued by defendants at the December 9, 2009 hearing.

### C. **Primary Jurisdiction Doctrine**

Defendants argue that primary jurisdiction doctrine provides a sound basis for this Court to dismiss this case, or, alternatively to stay the action pending consideration and resolution by appropriate state agencies. Defendants explain, citing *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 670 (9th Cir. 2004), that the doctrine applies where "state agencies, not federal courts, have initial responsibility for deciding the issues raised. Defendants urge that responsibility to interpret and apply state statutes at issue in the instant case should be accorded first to Ecology and Washington Department of Fish and Wildlife.

Plaintiffs, citing *Clark v. time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008), argue that this doctrine is inapplicable. Plaintiffs argue the doctrine operates as a referral to agencies possessing quasi-legislative functions. Here, plaintiffs state, no referral is possible. Finally, plaintiffs conclude that this Court is the only court that could hear these claims. According to plaintiffs, defendants cannot be sued in state court by any plaintiff under the APA for the violations at issue. Ct. Rec. 20, at 22-23.

Similarly, defendants argue, under Washington's Fishway Law, the State Legislature delegated the authority to ensure compliance exclusively to the Washington Department of Fish and Wildlife (WDFW). See RCW 77.57.030. Defendants point out that the statute is replete with references to the authority vested by the Legislature in the Director of WDFW. Ct. Rec. 10, at 14. Defendants further argue that plaintiff WFC

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 24

is aware that the state is the appropriate venue of relief as evidenced by the July 28, 2008 letter to Ecology requesting an investigation and action regarding the Hatchery's water rights. See Letter to Ken Slattery, Program Director, Water Resources Program, Ct. Rec. 10, Exh.1.

Defendants state that under the Fishway Law, any decision regarding compliance and enforcement is committed to the discretionary authority of WDFW. Like the State's Water Code, the Fishway Law is a comprehensive regulatory scheme that requires expertise and uniformity in administration. Under state law, plaintiffs' recourse is to report the Hatchery's alleged non-compliance with the Fishway Law to WDFW and request redress by the State.

Defendants also argue that the Fishway Law does not provide a remedy to a private party. The plaintiffs cannot circumvent the limitation against citizen suits by suing FWS in federal court under the APA. Even if such a right did exist, defendants surmise, plaintiffs still would have to overcome the strong presumption under *Heckler v. Chaney*, which commits enforcement decisions on fishways exclusively to the Director of WDFW. Because the state laws contested in the Complaint assign enforcement responsibility to state officials, defendants conclude that this court should dismiss the Complaint under the doctrine of primary jurisdiction in deference to the duly delegated authority of Ecology and WDFW to enforce the State's Water Code and the Fishway Law.

The doctrine of primary jurisdiction provides that courts may route threshold decisions as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular activity involved. *Rhoades v. Avon Products*, Inc., 504

F.3d 1151 (9th Cir. 2007); *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003). Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The doctrine is appropriate where regulatory authority has been delegated to state agencies."

The Court finds that if the statute of limitations was not applicable in this case, abstention under primary jurisdiction is especially well-suited to the present situation with respect to plaintiffs' water rights claims.  Under the Water Code, any decision regarding enforcing water rights is committed, in the first instance, to Ecology.  The state Water Code is a comprehensive regulatory scheme that requires expertise and uniformity in administration. Defendants have represented that a pending Section 401 permit application has been filed by FWS with Ecology.  Depending on Ecology's decision, water operations at the Hatchery will likely be impacted.[9]  Similarly, compliance and enforcement of the alleged fishways law violations is committed to the discretionary authority of WDFW.  If the statute of limitations were not applicable in this case, the Court finds that

---

[9]To date, defendants represent that Ecology has given no indication that enforcement action against FWS is warranted concerning its water rights for the Hatchery. Ct. Rec. 10, at 14.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 26

abstention under primary jurisdiction is appropriate with respect to plaintiffs' state fishway law claims.

**VI.  CONCLUSION**

The applicable statute of limitations, 28 U.S.C. § 2401, provides that the statute is triggered when "the right of action first accrues." "[A] cause of action against an administrative agency 'first accrues,' within the meaning of § 2401(a), as soon as ... the person challenging the agency action can institute and maintain a suit in court."  In *City of Moses Lake v. United States*, 451 F.Supp.2d 1233 (E.D.Wash.2005), the court stated that a Federal Tort Claims Act claim against the United States accrues pursuant to 28 U.S.C. § 2401 when the plaintiff knows both the existence and the cause of his or her injury, even if he or she does not know that a cause of action has accrued.  *Id.* at 1241-43 (citing *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). Plaintiffs, who were aware of both the existence and the cause of their alleged injuries no later than 2000, and in all probability were on notice thereof many years before that, fail to meet their burden of showing that the statute is tolled.  Accordingly, their claims are untimely, and this Court has no jurisdiction over the matter.

**IT IS ORDERED** that:

1.  Defendants' Motion to Dismiss, **Ct. Rec. 9**, is **GRANTED.**

///
///
///
///

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 27

2.   The District Court Executive is directed to file this Order;
provide copies to counsel of record; ENTER JUDGMENT CONSISTENT WITH
THIS ORDER; and CLOSE FILE.

**DATED** this 3rd day of February, 2010.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS – 28